## GINGER *v.* WAYNE CIRCUIT JUDGE.

1. Attorney and Client—Contempt—Court Orders.

Attorney who has persisted in refusal to comply with court order that he produce his records, assets, books, and accounts receivable to the receiver, or, in the alternative, pay balance due on judgment against him *held,* to have failed to purge himself of contempt by insisting upon his own construction of an order of the Supreme Court that all he was required to produce were his accounts receivable (Canons of Professional Ethics No 1).

2. Appeal and Error—Brief and Appendix—Criticism of Trial Judge.

Appellant's brief and appendix *held,* improperly prepared because of inclusion therein of comments adversely criticizing the trial judge in his judicial capacity and setting up of appellant himself as the person to make the proper interpretation of orders of the Supreme Court rather than to submit to the trial court's interpretation thereof, and in failing to set forth in proper detail the proceedings of the lower court (Canons of Professional Ethics No 1).

---

References for Points in Headnotes
[1] 12 Am Jur, Contempt §§ 11–13.
[2] 3 Am Jur, Appeal and Error § 768 *et seq.*

Original mandamus by George L. Ginger against Miles N. Culehan, Wayne Circuit Judge, to vacate order adjudging him in contempt of court, with which action is incorporated an appeal from Wayne, Sullivan (Joseph A.), J., of orders directing payment of certain sums to receiver. Submitted April 3, 1962. (Calendar No. 48,962.) Writ denied and orders affirmed July 2, 1962.

*George L. Ginger, in propria persona.*

*J. Willard Carpenter*, for defendant.

ADAMS, J. In June, 1960, this Court handed down its opinion in the case of *Curtis* v. *Ginger Machine Products Corporation*, 359 Mich 609. An order of the circuit court for Wayne county declaring George L. Ginger to be in contempt, was reviewed. This Court then said (pp 613, 614):

"The record shows that Mr. Ginger, a member of the bar, has deliberately and knowingly refused to comply with the order of the court requiring him to produce his records, assets, books, and accounts receivable to the receiver. It is regrettable that the careless drafting of the order finding him in contempt did not provide that defendant Ginger could purge himself of contempt by producing his assets, books, records, and accounts receivable, or, in the alternative, by the payment of the balance due on the judgment."

On August 24, 1960, Mr. Ginger appeared before the circuit judge with a purported record of his accounts receivable. They were objected to and a request was made that he be required to produce the files of his cases. Mr. Ginger took the position that his accounts receivable were all that he was required to produce. He was sent to jail.

The following day Mr. Ginger was brought before

the court. The court advised Mr. Ginger that a card showing he had a client was not the record of that client. Whereupon the following occurred:

"*The Court:* All right. Go right ahead. I'm trying to help you, Mr. Ginger.
"*Mr. Ginger:* No, you're not trying to help me."

Further discussion and argument followed. Mr. Ginger contended for his construction of the Supreme Court's opinion and refused to accept the construction of the judge. At last, the court said:

"I will adjourn the matter to a week from today. Now, this is one more chance you are getting, Mr. Ginger, and I'm trying to be helpful.
"*Mr. Ginger:* I don't think you have been helpful."

The discussion continued. Mr. Ginger contended that he had produced all of the records he was required to and that they were contained in 2 brief cases in the courtroom. The same were never placed in evidence, nor was any effort ever made to place them in evidence. The brief cases remained closed. Their contents are not before us at this time.

However, the court did advise Mr. Ginger as follows:

"Produce means in this court. So produce the records here within a week. Just stack them back up there in the corner if you have to.
"*Mr. Ginger:* I can see your Honor is making it very convenient. I will hire a truck and that certainly is going beyond the Supreme Court's decision."

And toward the conclusion of the hearing, Mr. Ginger stated:

"I will build up a record on [one (sic?)] which can be produced to present to the Supreme Court."

A week later, on September 2, 1960, Mr. Ginger was again before the court. There was more discussion

with regard to his records and with regard to a motion he had made asking for vacation of an order directing payment of judgment to his receiver. Opposing counsel made the following statement with regard to the accounts that had been produced:

"*Mr. Carpenter:* Now, we come to the next item. We have a sheet here that says, 'John Kish, divorce fees.' He's got here 'Debit of $2,250.' He has the same thing here, 'John Kish' with the language, 'G.L.G., assignee of Mary Julius and Theodore Julius, $19,959.99.' Now, I submit, if the court please, that every one of these sheets, and there aren't many of them—every one of them are of a similar tenor. They don't tell me one single, solitary thing excepting that apparently he has come to the conclusion that he has the right to collect this sum of money, but with no basis whatever for it. I am entitled to have that information."

Opposing counsel requested an opportunity to examine Mr. Ginger with respect to his accounts. September 7th was set for the examination. Mr. Ginger then demanded a ruling on his motion. The court refused, stating that he would not rule until the court's orders had been complied with. Whereupon Mr. Ginger stated:

"This is where the case is going back to the Supreme Court."

Mr. Ginger again charged that the court had not permitted him to make a record.

The following then occurred:

"*The Court:* Just do what the court has told you to do and you won't have any trouble at all.

"*Mr. Ginger:* This question will have to be settled in the Supreme Court. * * *

"*The Court:* You have been to the Supreme Court, and they told you what to do and you still don't want to do it.

*"Mr. Ginger:* That's on the record your Honor wouldn't permit me to make."

Thereupon, the court sentenced Mr. Ginger to a fine of $25 or 10 days for contempt of court in open court and ordered the sheriff to take him to the county jail.

This matter, as well as additional proceedings by the receiver for George L. Ginger before Wayne Circuit Judge Joseph A. Sullivan to collect in the assets of George L. Ginger is once again before us. Judge Sullivan entered an order on November 25, 1960, providing for the payment of $500 due on a judgment entered in favor of Mr. Ginger to his receiver and the payment of $25 per month to the receiver. Mr. Ginger contends that the proceedings by the receiver ought to have been stayed when this Court agreed once again to review the contempt proceedings.

Canon 1 of the Canons of Professional Ethics, adopted by the Supreme Court of the State of Michigan, as a general guide for the State Bar of Michigan, provides:

"It is the duty of the lawyer to maintain toward the courts a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance. Judges, not being wholly free to defend themselves, are peculiarly entitled to receive the support of the bar against unjust criticism and clamor. Whenever there is proper ground for serious complaint of a judicial officer, it is the right and duty of the lawyer to submit his grievances to the proper authorities. In such cases, but not otherwise, such charges should be encouraged and the person making them should be protected."[*]

Evidently Mr. Ginger conceives his case to fall under the last 2 sentences of the canon. His position

---

[*] See 38 MSBJ 12 (May, 1959).—REPORTER.

throughout has been that of an adversary to the circuit judge. He has completely overlooked and failed to carry out his duties and responsibilities as an officer of the court. That his attitude to and conception of the situation is not merely one of momentary, flaring anger in the heat of the contest is best evidenced by comments from his present brief to this Court.

Mr. Ginger states:

"This case from the very beginning was tried in a climate charged with prejudice, bias and open hostility.

"The unrestrained conduct of the defendant judge amounts to a gross and unwarranted abuse of judicial discretion."

With reference to the actions of Judge Sullivan, he says:

"It is not the subject matter of said orders entered by Circuit Judge Sullivan that concerns this plaintiff, as the principal involved here, namely; that a person may at his election place.his own interpretation and treat with disesteem a ruling of the highest court in this State by contending that the order in question does not apply."

So appellant sets up his own interpretation of the orders of this Court against that of the circuit judge. Mr. Ginger completely misconceives the nature of these proceedings which go back to a lawsuit instituted against the plaintiff on February 21, 1951. Ignoring his own responsibility as a member of the bar, he would now have us chastise and rebuke, not 1 but 2 circuit judges of the Wayne county circuit for their efforts to achieve a solution to a problem of his own making.

These proceedings, as above set forth, are replete with contempts committed by the appellant. It is the finding of this Court that appellant failed to purge himself of contempt in accordance with the

opinion of this Court issued June, 1960; that the appellant was guilty of further contempt of court on August 25, 1960, and on September 2, 1960. The appellant's brief and appendix filed with this Court were improperly prepared because of the comments hereinabove noted and because the appendix is wholly inadequate in that it fails to set forth in proper detail the proceedings in the lower court.

Writ denied. The matter is remanded to the lower court for such further proceedings as that court may find necessary. The orders entered by the Honorable Joseph A. Sullivan, which were stayed pending review by this Court, are hereby affirmed.

Costs to the appellee.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, SOURIS, and OTIS M. SMITH, JJ., concurred.