## GINGER v. WAYNE CIRCUIT JUDGE.

1. JUDGES—EXAMINATION OF PARTIES BY JUDGE—INTERRUPTION BY ATTORNEY.

   A trial judge has a right and duty to ascertain the facts in a proceeding properly before him even to the extent of examining a party to such proceeding without interruption by the attorney for such party.

2. LIBEL AND SLANDER—JUDGES—ABSOLUTE PRIVILEGE.

   Judges, in performing judicial acts, have an absolute privilege as a defense to action for slander for remarks made during such proceeding.

3. SAME—ABSOLUTE PRIVILEGE.

   Absolute privilege, as a defense to an action for libel or slander, is limited to the 3 instances of communications made during judicial or legislative proceedings or by military and naval officers, as it applies to matters of public concern.

4. SAME—ABSOLUTE PRIVILEGE—MALICE.

   An absolutely privileged communication is generally defined as one for which no remedy is provided for damages in a civil action for slander or libel because of the occasion on which it was made or uttered, even though made maliciously.

5. SAME—QUALIFIED PRIVILEGE—MALICE—GOOD FAITH.

   A communication is qualifiedly privileged when it is actionable if made with actual malice, but not if made in good faith.

6. SAME—JUDGES—ABSOLUTE PRIVILEGE.

   A judge of a court, during a judicial proceeding, has an absolute immunity and no action can be maintained against him, even though it be alleged that he spoke maliciously knowing his words to be false, that they were irrelevant to the matter in issue before him, and wholly unwarranted by the evidence.

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 75.
[2, 6, 8, 9] 33 Am Jur, Libel and Slander §§ 146–152.
[3, 7] 33 Am Jur, Libel and Slander § 125.
[5] 33 Am Jur, Libel and Slander § 126.
[6, 8] 30A Am Jur, Judges § 74.

7. SAME—ABSOLUTE PRIVILEGE—PUBLIC POLICY.

    The doctrine of absolute privilege from civil liability for libel or slander rests on the underlying principle of public policy, where the interests and necessities of society require that the utterer shall be protected from all liability for prosecution for the sake of the public good.

8. SAME—JUDGES—INTERRUPTION DURING EXAMINATION OF WITNESS.

    Remarks of trial judge to attorney for plaintiff at hearing on an order to show cause, when such attorney interrupted the judge's examination of plaintiff, reproved the judge for the judge's action, and told the witness what to answer, that the attorney ought to be disbarred and was out of court *held,* not actionable because of the absolute privilege attaching to utterances of a judge while functioning in a judicial capacity.

9. JUDGES—DISCIPLINE—LIBEL AND SLANDER.

    The discipline of judges who abuse the important position which they occupy may not be made by a civil action for libel or slander, other means being provided for supervision of the judiciary (Const 1908, art 7, § 4; GCR 1963, 930).

Appeal from Wayne; Murphy (Thomas J.), J. Submitted March 6, 1963. (Calendar No. 69, Docket No. 49,967.) Decided April 5, 1963. Rehearing denied May 9, 1963. Certiorari denied by the supreme court of the United States October 14, 1963.

Case by George L. Ginger against George E. Bowles, Wayne Circuit Judge, for slander dismissed on motion. Plaintiff appeals. Affirmed.

*George L. Ginger, in propria persona.*

*Samuel H. Olsen,* Prosecuting Attorney, *Aloysius J. Suchy* and *George H. Cross,* Assistant Prosecuting Attorneys, for defendant.

KAVANAGH, J. Plaintiff, a practicing attorney, brought this action in the circuit court of Wayne county seeking damages for alleged slander against defendant Circuit Judge George E. Bowles. Plaintiff claims the defendant judge slandered him during a hearing on an order to show cause.

Defendant filed a motion to dismiss plaintiff's action, claiming he, as a circuit judge, was clothed with an absolute privilege, and therefore his statements, if indeed they were slanderous, were not actionable. At the conclusion of the hearing on defendant's motion to dismiss, Circuit Judge Thomas J. Murphy granted the motion, holding defendant came within the purview of the rule of absolute privilege.

Plaintiff is here on appeal raising 2 questions, which can be consolidated as follows:

Is a judge acting in his judicial capacity liable for an action of slander or libel for communications made by him during the course of a judicial hearing?

The record discloses that at the hearing on the order to show cause, the court indicated he had been trying for 3 weeks to find out whether the plaintiff in the action before him conceded she owed money to the defendant. He made inquiry of the plaintiff's attorney, who stated: "My client concedes she doesn't owe him a dime." The court asked the defendant in the case how he supported his claim of money owing; and defendant responded that he supported his claim by a land contract schedule which had been faithfully maintained by him and Miss Dean every time a payment was made. The court then asked the plaintiff's client, Miss Dean, to come up to the bench, and the following colloquy took place:

*"The Court:* I am going to ask Miss Dean a couple questions because I think maybe I will get through.

"Could you tell me whether or not you concede that you are behind in your land contract payments?

*"Miss Dean:* In the land contract as such?

*"Mr. Ginger:* In the land contract as such, no.

*"The Court:* I am talking to her. I am sorry I have to do it this way but because life is so short—

could you tell me whether you are behind in your land contract payment?

"*Miss Dean:* I would say in the contract between Mr. Donigan and myself I don't know what to say because he has some other idea.

"*The Court:* Well, just between us.

"*Miss Dean:* I was trying to work it out weekly with Mr. Donigan.

"*The Court:* Do you concede, as Mr. Donigan said here as an officer of the court, several times, that you are behind in land contract payments? Do you concede that, apart from any other factor?

"*Miss Dean:* Is that right?

"*Mr. Ginger:* I am going to tell her to answer she is not.

"*The Court:* You know you ought to be disbarred and I want that on the record. You ought to be disbarred, George Ginger, because you won't allow, as an officer of this court, a judge trying to do justice in the case, to interrogate this witness.

"I am going to dismiss this order to show cause.

"*Mr. Ginger:* The judge should first find out what the facts of the case are. This man does not own this property.

"*The Court:* You are out of court!"

That defendant judge acted in a judicial capacity cannot be questioned. What he did was done as a circuit judge. The matter was properly before him on the order to show cause. He had a right and a duty to ascertain the facts.

Michigan has always held that judges in performing judicial acts have an absolute privilege. See *Mundy* v. *McDonald,* 216 Mich 444, 454 (20 ALR 398); *Hart* v. *Baxter,* 47 Mich 198 (where Justice COOLEY refers to the case of *McLaughlin* v. *Cowley,* 127 Mass 316). See, also, *Timmis* v. *Bennett,* 352 Mich 355, 362, where Justice CARR, writing for the Court, quoted with approval from Newell, Slander and Libel (4th ed), § 351, as follows:

"Cases of absolute privilege are not numerous, and the courts refuse to extend their number. They are divided into 3 classes. (1) Proceedings of legislative bodies; (2) Judicial proceedings; and (3) Communications by military and naval officers."

The Court further said (pp 363, 364):

"In 15 MLP, Libel and Slander, § 22, pp 411, 412, a number of prior decisions of this Court dealing with the question of privilege in slander and libel cases are cited, and summarized in the following statement:

" 'An absolutely privileged communication is generally defined as one for which no remedy is provided for damages in a civil action for slander or libel because of the occasion on which it was made or uttered. A communication absolutely privileged, as, for example, words spoken by a judge in his judicial capacity in a court of justice, or a report or statement rendered privileged by an enactment of the legislature, is not actionable, though made maliciously, and questions of good faith and the absence of malice are immaterial; but a communication qualifiedly privileged is distinguishable because it is actionable, if made with actual malice, but not if made in good faith.

"Absolute privilege applies more directly to matters of public concern, in regard to which it is considered as a matter of public policy for the general welfare that persons should be permitted to express their views more freely and fearlessly than in regard to private matters or persons. Thus, absolute privilege has a comparatively narrow scope, and it is, speaking generally, strictly confined to legislative proceedings, judicial proceedings in the established course of justice, acts of state and acts done in the exercise of military and naval authority; and in judicial proceedings the protection of the rule extends to judges, counsel and witnesses.' "

In *Raymond* v. *Croll,* 233 Mich 268, this Court stated (pp 272, 273):

"It is the policy of the courts to keep the doctrine of absolute privilege within these narrow limits, because, as Mr. Newell says, 'It rests upon the same necessity that requires the individual to surrender his personal rights, and to suffer loss for the benefit of the common welfare.'

" 'Generally speaking, absolute privilege is confined to cases in which the public service or the administration of justice requires complete immunity from being called to account for language used. It applies more directly to matters of public concern, such as language used in legislative, judicial and executive proceedings; and it is not intended so much for the protection of those engaged in the service, as it is for the promotion of the public welfare.' 36 CJ, Libel and Slander, § 204, pp 1240, 1241.

"Our court recognizes the rule of absolute privilege, but it has repeatedly refused to extend its application beyond the necessities of the judicial, legislative, and military occasions." (Citing cases.)

In *Mundy* v. *McDonald, supra,* Justice STONE said (p 454):

"That defendant acted in a judicial capacity cannot, we think, be questioned. What he did, he did as a circuit judge. The statute gave him power to conduct the proceedings. The principle that judges and courts of superior jurisdiction are immune from actions based upon judicial acts may be said to be as old as the beginning of the English common law.

"In Newell on Slander and Libel (3d ed), § 520, the rule is stated as follows:

" 'In England, and generally in the United States, a judge of a court has an absolute immunity, and no action can be maintained against him, even though it be alleged that he spoke maliciously knowing his words to be false, and also that his words were irrele-

vant to the matter in issue before him, and wholly unwarranted by the evidence.' "

The principle which exempts judges of courts from liability in a civil action for acts done by them in the exercise of their judicial functions exists in all countries where there is a well-ordered system of jurisprudence. The great underlying principle upon which the doctrine of absolute privilege stands is public policy. The interests and necessities of society require that a party acting in his judicial capacity shall be protected from all liability for prosecution for the sake of the public good.

The cases relied upon by appellant are not applicable to the situation which existed in the instant case. Most of them are distinguishable because they deal with qualified privilege and not absolute privilege. The New York cases cited by the plaintiff were decided upon the basis of the existence of a question of fact as to whether the alleged slander took place during the judicial proceedings or after they had been closed.

Michigan has provided for other means of supervising our judiciary so that if judges abuse the important position they occupy, they may be properly disciplined.[*]

The order dismissing the suit is affirmed, with costs to defendant-appellee.

CARR, C. J., and DETHMERS, KELLY, BLACK, SOURIS, OTIS M. SMITH, and O'HARA, JJ., concurred.

---

[*] Constitution 1908, art 7, § 4; GCR 1963, 930.